IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Johnny Calloway, #272829, | ) | C/A No.: 1:09-1925-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Rhonda Abston, Wade Byrd and | ) | |
| Officer Jeffrey, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

I.     Introduction

        Plaintiff, proceeding pro se, is an inmate in the custody of the South Carolina

Department of Corrections (SCDC), and was housed at Perry Correctional Institution (PCI)

at the time he filed his complaint.[1]  Plaintiff raises numerous constitutional claims under 42

U.S.C. § 1983, as well as pendant state law claims.  This matter comes before the court on

the following motions: (1) Plaintiff's Motions for Temporary Restraining Order [Entry # 20,

#45]; (2) Plaintiff's Motion for Default Judgment [Entry #21]; (3) Plaintiff's Motion for

Summary Judgment [Entry # 27]; (4) Defendants' Motion for Summary Judgment [Entry

#37]; and (5) Plaintiff's Motion to Appoint Counsel [Entry # 46].

---

[1] Defendants indicate that Plaintiff was transferred from PCI. [Entry #52-3].  The SCDC
website reflects Plaintiff is now housed at Lieber Correctional Institution.  Although Plaintiff has
not informed the court of his new mailing address in accordance with the court's instructions
(Order dated August 17, 2009 [Entry #6]), in light of the apparent transfer, the Clerk's Office is
directed to mail a copy of this R&R to Plaintiff to the mailing address on the CM/ECF docket, as
well as to Plaintiff c/o Lieber Correctional Institution.  Plaintiff remains responsible for notifying
the Clerk's Office if his mailing address has changed.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge.

II.    Discussion

A.    Motions for Temporary Restraining Order

In Plaintiff's Motions for Temporary Restraining Order (TRO), he "seeks a [TRO] and a preliminary injunction to ensure that no further assaults happen between Plaintiff and the staff at [PCI]." Motion for TRO [Entry # 20] at 1. Plaintiff asserts that he has been assaulted by the staff at PCI on several occasions, including the one at issue in the present case. In an Affidavit submitted along with Defendants' Response [Entry # 52] to Plaintiff's second Motion for Temporary Restraining Order, Lt. Charles Williams avers that Plaintiff has been transferred to another facility. Williams Aff. ¶ 2. Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the conditions about which he complained. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983). Plaintiff complains of the alleged assaults against him by the staff at PCI. Because Plaintiff is no longer incarcerated at PCI, his Motions for Temporary Restraining Order are moot.

B.    Motion for Default Judgment

Plaintiff moves for default judgment against all three Defendants. Rule 55,

Fed.R.Civ.P., allows the court to enter judgment against a defendant who has failed to file an answer or otherwise defend against the allegations in the plaintiff's complaint. Defendant Wade Byrd (Byrd) and Defendant Rhonda Abston (Abston) were served on September 17, 2009. <u>See</u> Process Receipts and Returns [Entry # 13, #14].[2] Answers were due from these Defendants by October 7, 2009. <u>Id.</u> On September 23, 2009, Byrd, Abston, and Defendant Officer Jeffrey (Jeffrey) filed a Motion for Extension of Time [Entry #12] to file an Answer or otherwise plead. Defendants sought to extend the deadline until October 31, 2009. The Motion was granted as unopposed by Order [Entry #15] dated October 14, 2009. Defendants filed an Answer [Entry #17] on October 30, 2009. Because Defendants timely filed an Answer, default judgment is not appropriate and Plaintiff's Motion for Default Judgment should be denied.

    C.    Motions for Summary Judgment

        1.    Relevant Facts

At all times relevant to the Complaint, Plaintiff was housed at PCI. Plaintiff alleges that at some point in late May or early June, 2007, Byrd threatened to inflict harm on Plaintiff because of "Plaintiff talking to and finding favor in the eyes of females on or that comes to SMU and other pass (sic) difficulties," including Plaintiff's filing of a previous civil action

---

[2] The United States Marshal's Service had some difficulty locating Defendant Officer Jeffrey for service although a Jeremy Jeffrey in North Carolina was ultimately served. <u>See</u> Process Receipt and Return [Entry # 26]. Nevertheless, defense counsel appears to have accepted service on behalf of Jeffrey.

against Byrd. Complaint ¶ 5.[3] In the previous civil action, Plaintiff alleged that the defendants used excessive force by their use of chemical munitions after Plaintiff was observed with a metal bar in his hand, threatened to harm any staff member who entered his cell, and refused to release the metal bar. Byrd Aff. ¶¶ 4-7. Byrd attaches to his Affidavit records of Plaintiff's disciplinary history while in SCDC custody.

According to Plaintiff's Complaint, at approximately 8:30 to 9:00 a.m. on May 30, 2009, Byrd and Jeffrey "pulled the plaintiff for the shower." Complaint ¶ 6; see also Plaintiff Medical Records (attached to Plaintiff's Motion for Summary Judgment). Plaintiff claims he took a shower without incident, but when Byrd and Jeffrey returned him to his cell, they both entered the cell and Jeffrey removed Plaintiff's leg irons. Complaint at ¶ 6. Plaintiff alleges that Jeffrey then hit him in the back and grabbed him and that Byrd punched him in the stomach two times, and he fell to the floor. Id. at ¶ 7. Plaintiff alleges Byrd and Jeffrey pulled him by his handcuffs to the cell door and removed them, and he again fell to the floor. Id. Plaintiff alleges that while removing his handcuffs, Byrd told him to drop his lawsuit or he would "get it again." Id. at ¶ 8.

Plaintiff claims he attempted to seek medical attention, but Byrd and Jeffrey told the nurses and others to ignore him. Id. at ¶ 9. Later the same night, Plaintiff started vomiting blood. Id. at ¶ 10. The next day, Plaintiff informed Sargent Grant of the incident and Grant

---

[3]Plaintiff attaches to his Complaint an Affidavit in which he swears that "everything in the Complaint is true." Pl. Aff. ¶ 2. Thus, the undersigned will read the Complaint as a sworn statement.

witnessed the blood in Plaintiff's vomit and in his stool.  Id. at ¶ 10; see also Plaintiff

Medical Records (stating "blood in vomitus and stool has been verified [sic] per Sgt. in dorm

to nurse Van Heusen"). Plaintiff claims that he was not seen until June 2, 2007, when he was

seen by Nurse Alice M. Revis, LPN.  See Plaintiff's Medical Records.  The medical records

reflect that Plaintiff complained of "vomiting blood and blood in stool since 5/30/07" and

alleged he was assaulted on May 30, 2007, with injuries to his abdomen.  Id.  Nurse Revis

notified Dr. Lewis, who ordered that Plaintiff be transported to Greenville Memorial Hospital

for further evaluation. Id.  The physician who treated Plaintiff at the hospital entered a final

diagnosis of "abdominal wall contusion following assault."  Id.  On the day Plaintiff was

taken to the hospital, Abston was the on-call Warden.  Id. ¶ 12.

### 2. Standard of Review

The federal court is charged with liberally construing the complaints filed by pro se

litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405

U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is

not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The

requirement of liberal construction does not mean that the court can ignore a clear failure in

the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of Social Servs.,

901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of

material fact where none exists.  If none can be shown, the motion should be granted.  Fed.

R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported

as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

      3.      Analysis

          a.      42 U.S.C. § 1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right

secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

Plaintiff asserts causes of action for excessive force, retaliation, deliberate indifference to serious medical needs, due process violations, and conspiracy.[4] It is undisputed that Defendants were acting under color of state law at the time of the events alleged in the Complaint.

b.      Excessive Force

Plaintiff alleges that Byrd and Jeffrey used excessive force when they punched him in the back and stomach while he was restrained with handcuffs. It is well-established that the use of excessive force upon an inmate violates the Eighth Amendment's prohibition against cruel and unusual punishment. Hudson v. McMillian, 503 U.S. 1, 5 (1992). To establish an Eighth Amendment claim for cruel and unusual punishment, the plaintiff must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 298. The subjective component requires the inmate to show that the officers applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." Hudson,

_____

[4]In his Memorandum in Support of Motion for Summary Judgment, Plaintiff also addresses claims for gross negligence, grossly negligent supervision, outrage, assault and battery and medical malpractice. However, Plaintiff did not plead these causes of action in his Complaint.

503 U.S. at 6-7. The objective component requires the court to determine "if the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation." Hudson, 503 U.S. at 8 (quoting Wilson, 501 U.S. at 298, 303).

Appropriate force may be used by prison officials when it is intended to maintain the discipline within a prison institution or to restore order. See Hudson, 503 U.S. at 6; Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official "inflicted unnecessary and wanton pain and suffering." Hudson, 503 U.S. at 7. In evaluating such a claim, "the question of whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (Internal quotations omitted). In determining whether a prison official acted maliciously and sadistically, the court should consider: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Williams, 77 F.3d at 762.

Defendants do not specifically address the alleged use of force on May 30, 2007. In his Affidavit, Byrd avers, "I have not ever struck [Plaintiff] or hit him in any way," and "Jeffrey has not ever hit the Plaintiff or used excessive force in my presence or to my knowledge." Byrd Aff. ¶¶ 9-10. Byrd does not dispute that he threatened Plaintiff with harm

if he failed to dismiss his lawsuit. Instead, Defendants submit copies of Incident Reports regarding Plaintiff's behavior both before and after May 30, 2007. No Incident Report has been submitted addressing the events of May 30, 2007. In their Motion for Summary Judgment, Defendants assert that "the amount of force used was not excessive in these circumstances." Memo. in Support of Defendant's Motion for Summary Judgment [Entry # 37-1] at 4. Defendants appear to argue that, given Plaintiff's history of unruly behavior, they perceived Plaintiff to be a threat. However, nothing in the record indicates that Plaintiff exhibited any threatening behavior on May 30, 2007. At the very least, a question of fact exists as to whether Byrd and Jeffrey used force against Plaintiff on May 30, 2007, and, if so, under what circumstances, as well as whether Byrd threatened additional force if Plaintiff failed to dismiss his lawsuit against Byrd. Viewing the facts in the light most favorable to Plaintiff, he has submitted sufficient evidence to create an issue of fact as to whether Byrd and Jeffrey applied force to Plaintiff maliciously and sadistically for the very purpose of causing harm.

Plaintiff must also present evidence sufficient to show that the use of force by Byrd and Jeffrey was objectively "harmful enough" to rise to the level of a constitutional violation. The Fourth Circuit has previously held that "absent the most extraordinary circumstances, a Plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994). However, the Supreme Court recently qualified the threshold set forth in Norman. Wilkins v. Gaddy, --- U.S. ----,

130 S.Ct. 1175, ---L.Ed.2d ---- (2010). In <u>Wilkins</u>, the Court held that the level of force used determines whether an inmate's constitutional rights were violated, not the injury sustained. <u>Id.</u> at 1178.

"When prison officials maliciously and sadistically use force to cause harm' ... 'contemporary standards of decency are always violated ... whether or not significant injury is evidence. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" <u>Id.</u> (quoting <u>Hudson</u>, 503 U.S. at 7). The <u>Wilkins</u> Court recognized that "the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. The extent of injury may also provide some indication of the amount of force applied. <u>Id.</u> (internal citations omitted). However, the Court noted that "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." <u>Id.</u> at 1178–79.

The record reveals that following the alleged use of force on May 30, 2007, Plaintiff vomited blood and had blood in his stool. The doctor on call at PCI at the time Plaintiff first visited the medical department three days later on June 2, 2007, found Plaintiff's injuries to be sufficiently serious to warrant outside medical attention from Greenville Memorial Hospital's Emergency Room. Further, the hospital records of June 2, 2007, reflect a

diagnosis of "Abdominal Wall Contusion after assault." [Entry #27-2]. Given these facts, a question exists as to the objective component of Plaintiff's excessive force claim. Accordingly, it is recommended that summary judgment be denied as to both Plaintiff and Defendants Byrd and Jeffrey.

Plaintiff has neither alleged nor presented facts to indicate that Defendant Abston participated in the use of force. Plaintiff alleges only that Abston was the on-call Warden on the day Plaintiff was transferred to the hospital and that Abston failed to charge Byrd or Jeffrey with any violation of SCDC rules. To hold a supervisor liable for a constitutional injury inflicted by a subordinate under § 1983, the plaintiff must allege facts establishing the following elements: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994). Here, as alleged by Plaintiff, Abston became aware of the alleged actions of Byrd and Jeffrey three days after the use of force occurred. Plaintiff has failed to present sufficient evidence of an affirmative causal link between any inaction by Abston and any injury sustained by Plaintiff. Thus, to the extent Plaintiff has asserted a cause of action for excessive force against Abston,

the claim fails and summary judgment in favor of Abston is appropriate.[5]

c.    Retaliation

Plaintiff asserts that the use of force by Byrd and Jeffrey was in retaliation for his constitutionally-protected right to access the courts and for his use of the internal grievance procedure. "Retaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper." American Civil Liberties Union, Inc. v. Wicomico County, 999 F.2d 780, 785 (4th Cir.1993). To state a claim of retaliation under § 1983, a plaintiff must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). An inmate must present more than conclusory accusations of retaliation. Id. at 74. Rather, he must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. See, e.g., Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996); Hughes v. Bledsoe, 48 F.3d 1376, 1387 n. 11 (4th Cir. 1995). Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. American Civil Liberties Union, 999 F.2d at 785. Where a plaintiff claims that he suffered retaliation for filing a lawsuit, he must show that the retaliatory acts adversely impacted his right to access the courts. Id. The

---

[5]That Plaintiff has failed to present sufficient evidence of an affirmative causal link between any inaction by Abston and any injury sustained by Plaintiff is true for Plaintiff's other causes of action against Abston. Thus, summary judgment in favor of Abston is appropriate on those claims as well.

adverse impact must be more than a de minimis inconvenience. Id. at 786 n. 6.

Plaintiff avers that Byrd and Jeffrey used force against him on May 30, 2007, and that Byrd told him to drop his lawsuit or he would "get it again." Defendants have not disputed this allegation  other than to state that Plaintiff's allegations are "absurd." Defendants' Memorandum in Support of Motion for Summary Judgment at 3  [Entry # 37-1]. However, Plaintiff has presented no evidence, nor has he alleged, that the use of force resulted in an adverse impact to his previous lawsuit. Thus, Plaintiff has failed to establish a cause of action for retaliation under § 1983.

### d.    Deliberate Indifference to Serious Medical Needs

Plaintiff also alleges that Defendants were deliberately indifferent to his serious medical needs by failing to allow him to seek medical attention for two or three days after the alleged use of force on May 30, 2007. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id. (quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . .  We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

"A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)). Alleged delays in providing adequate care also do not rise to the level of deliberate indifference where the delay does not cause further injury. Kane v. Hargis, 987 F.2d 1005, 1009 (4th Cir. 1993); see also Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188 (11th Cir. 1994) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.").

Plaintiff avers that Defendants Byrd and Jeffrey told the nurses and others to avoid Plaintiff's request for medical attention. The alleged use of force occurred on May 30, 2007, and Plaintiff first received medical treatment on June 2, 2007. However, Plaintiff has not shown and does not allege that the delay in treatment caused further injury. Accordingly, Plaintiff's medical indifference claim is insufficient to survive summary judgment.

     e.     Due Process

Plaintiff alleges in his Complaint that Defendants violated his due process rights by

"failing to afford Plaintiff the process owed to him, i.e., A) by using force on Plaintiff in violation of SCDC's policy/procedure, B) by using force that was for retaliation purposes, C) by failing to record /document the incident, D) by interfering and denying Plaintiff medical attention." Complaint ¶ 17. A plaintiff bringing a § 1983 action for procedural due process must show that the state deprived him or her of a constitutionally protected interest in "life, liberty, or property" without due process of law. Zinermon v. Burch, 494 U.S. 113, 125 (1990) (citing Parratt v. Taylor, 451 U.S. 527, 537 (1981)). A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).

Plaintiff's claims of excessive force, retaliation, and medical indifference have each been addressed separately. Plaintiff can not present additional causes of action simply by asserting the same claims under different headings. However, Plaintiff does assert that Defendants violated his due process rights by failing to record or document the incident on May 30, 2007, as required by SCDC policies and procedures. Nevertheless, allegations that Defendants did not follow SCDC policies or procedures, standing alone, does not amount to a due process violation. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990) (if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) (violations of

prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). Plaintiff's due process violation allegations do not rise to a constitutional level. Thus, summary judgment in favor of Defendants is appropriate.

f.    Conspiracy

Plaintiff also asserts a cause of action for conspiracy. "To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [his] deprivation of a constitutional right." Marshall v. Odom, 156 F.Supp.2d 525, 532 (D.Md. 2001) (citing Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir. 1996)). To meet the "weighty burden to establish a civil rights conspiracy[,]" .... "[the plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Hinkle, 81 F.3d at 421. Thus, the "evidence must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." Id. Viewing the facts in the light most favorable to Plaintiff, Byrd and Jeffrey entered Plaintiff's cell together on May 30, 2007, and both used unlawful force against him. A genuine issue of material fact exists as to whether Byrd and Jeffrey positively and tacitly came to a mutual understanding to use unlawful force against Plaintiff on May 30, 2007. Thus, Plaintiff's claim for conspiracy under § 1983 should survive summary judgment.

However, to the extent Plaintiff asserts a state law claim for civil conspiracy, that

claim fails. In South Carolina, the tort of civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage. Vaught v. Waites, 387 S.E.2d 91, 95 (S.C. App. 1989). "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint," and "because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other cause of action." Hackworth v. Greywood at Hammett, LLC, 682 S.E.2d 871, 874 (S.C. 2009) (internal citations omitted). Plaintiff fails to allege additional facts in furtherance of a conspiracy, nor does he allege special damages as a result of the alleged conspiracy. Thus, summary judgment in favor of Defendants is appropriate on any state law claim for civil conspiracy.

4. Qualified Immunity

Defendants assert, to the extent Plaintiff's constitutional rights were violated, they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by this immunity. The Court in Harlow held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a

court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir.1998).

In Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F.2d at 298.

A question of fact exists as to whether Byrd and Jeffrey used excessive force against Plaintiff on May 30, 2007. The right to be free from cruel and unusual punishment is clearly established in the law. In addition, viewing the facts in the light most favorable to Plaintiff,

Byrd and Jeffrey used force against Plaintiff in the absence of any need for the application of force. That an officer should refrain from using force against an inmate in the absence of any threat of violence or other unruly behavior is apparent and such conduct can not be characterized as a bad guess in a gray area of the law. Thus, Byrd and Jeffrey are not entitled to summary judgment on the excessive force and conspiracy claims on the basis of qualified immunity.

III.    Conclusion and Recommendation

For the reasons discussed above, it is recommended that (1) Plaintiff's Motions for Temporary Restraining Order [Entry # 20, #45] be denied as moot; (2) Plaintiff's Motion for Default Judgment [Entry # 21] be denied; (3) Plaintiff's Motion for Summary Judgment [Entry # 27] be denied; and (4) Defendants' Motion for Summary Judgment [Entry # 37] be denied in part and granted in part. Specifically, it is recommended that Defendants' Motion for Summary Judgment be denied as to Plaintiff's claims of excessive force and conspiracy against Byrd and Jeffrey under § 1983 and that summary judgment be granted on all other claims.[6]

---

[6]A ruling on Plaintiff's Motion to Appoint Counsel [Entry # 46] should be held in abeyance pending the district judge's order on the above Motions.

IT IS SO RECOMMENDED.

August 10, 2010                              Shiva V. Hodges
Florence, South Carolina                     United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**