IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Johnny Calloway, #272829, | ) | C/A No.: 1:09-1925-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Wade Byrd and Officer Jeffrey, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Plaintiff, proceeding in forma pauperis, is currently incarcerated in the custody of the South Carolina Department of Corrections ("SCDC"). He alleges violations of his constitutional rights, which are construed as brought pursuant to 42 U.S.C. § 1983. Before the court is Defendants' Motion for Summary Judgment [Entry #82]. All pretrial proceedings in this case were referred to the undersigned magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion is dispositive, the undersigned submits this Report and Recommendation for the district judge's consideration.

I.    Factual and Procedural Background

Plaintiff alleges that at some point in late May or early June 2007, Defendant Byrd threatened to inflict harm on Plaintiff because of "Plaintiff talking to and finding favor in the eyes of females on or that comes to SMU and other pas[t] difficulties," including Plaintiff's filing of a previous civil action against Byrd. Compl. ¶ 5. [Entry #1]. According to Plaintiff's Complaint, at approximately 8:30 to 9:00 a.m. on May 30, 2007,

Byrd and Jeffrey "pulled the plaintiff for the shower." *Id.* at ¶ 6. Plaintiff claims he took a shower without incident, but when Byrd and Jeffrey returned him to his cell, they both entered the cell and Jeffrey removed Plaintiff's leg irons. *Id.* Plaintiff alleges that Jeffrey then hit him in the back and grabbed him while Byrd punched him in the stomach two times, causing him to fall to the floor. *Id.* at ¶ 7. Plaintiff alleges Byrd and Jeffrey pulled him by his handcuffs to the cell door and removed them, and he again fell to the floor. *Id.* Plaintiff alleges that while removing his handcuffs, Byrd told Plaintiff to drop his prior lawsuit or he would "get it again." *Id.* at ¶ 8.

Plaintiff claims he attempted to seek medical attention, but Byrd and Jeffrey told the nurses and others to ignore him. Compl. at ¶ 9. The complaint alleges that later the same night, Plaintiff started vomiting blood and that the next day, Plaintiff informed Sargeant Grant of the incident and Grant witnessed the blood in Plaintiff's vomit and in his stool. *Id.* at ¶ 10. Plaintiff claims that he was not seen by medical staff until June 2, 2007, when he was seen by Nurse Alice M. Revis, LPN. The medical records reflect that Plaintiff complained of "vomiting blood and blood in stool since 5/30/07" and alleged he was assaulted on May 30, 2007, with injuries to his abdomen. [Entry #27-2 at 8]. Nurse Revis notified Dr. Lewis, who ordered that Plaintiff be transported to Greenville Memorial Hospital for further evaluation. *Id.* at 11. The physician who treated Plaintiff at the hospital entered a final diagnosis of "abdominal wall contusion following assault." *Id.* at 2.

2

The parties filed cross-motions for summary judgment. The undersigned issued a Report and Recommendation on August 10, 2011, recommending Plaintiff's motion for summary judgment be denied and Defendants' motion for summary judgment be denied as to defendants Byrd and Jeffrey. On September 13, 2011, the Honorable Terry L. Wooten accepted the Report. The undersigned appointed counsel for Plaintiff and an amended scheduling order issued.

On April 28, 2011, Defendants again moved for summary judgment, arguing for the first time[1] that Plaintiff has failed to exhaust his administrative remedies in this case. [Entry #82-1 at 1]. Plaintiff submitted his Step 1 grievance on June 14, 2007. [Entry #82-3]. According to Defendants and undisputed by Plaintiff, Grievance Coordinator Miriam Snyder advised Plaintiff on June 18, 2007, that the grievance was being forwarded to the Division of Investigations. Snyder Aff., ¶ 2 [Entry #82-2]. Snyder further avers that on November 29, 2007, when she attempted to serve Plaintiff with the Warden's response to both grievances, Plaintiff was masturbating. *Id.* at ¶ 4. According to Snyder, because Plaintiff was masturbating, his grievance was deemed abandoned pursuant to SCDC policy and practice at the time. *Id.* According to Defendants, the policy at the time stated in relevant part:

---

[1] The undersigned notes that this is Defendants' first argument regarding Plaintiff's alleged failure to exhaust his administrative remedies, despite Defendants' prior motion for summary judgment filed February 2, 2010. In fact, this is the first mention of the defense since Defendants filed their answer on October 30, 2009, almost two years ago.

3

> **16. ABANDONMENT OF A GRIEVANCE**: A grievance will be considered abandoned in the following cases:
> **16.1** The inmate refuses to sign the grievance form at any level of the process; or
> **16.2** The inmate refuses to actively participate in the resolution process if the inmate's participation is deemed vital to the process.

[Entry #82-5]. Specifically, Snyder avers that Plaintiff's masturbation constitutes a refusal to sign the grievance form under paragraph 16.1 and a refusal to actively participate in the resolution process when is participation is vital under paragraph 16.2.

Plaintiff argues in response that his grievance was not timely processed and he was therefore deemed to have exhausted his administrative remedies upon the expiration of all response time periods. Pl.'s Resp. at 5–6 [Entry #88]. Defendants counter that because the grievance was referred to the Division of Investigation due to its allegations of criminal activity, it was therefore held in abeyance "until their review or investigation was completed." Defs.' Reply at 2. [Entry #95].

II.    Discussion

A.    Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."    Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If a

4

movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.     Analysis

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that

federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211, (2007); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required for "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. at 532. Exhaustion is a threshold requirement that must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth*, 532 U.S. at 741. Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216. Therefore, defendants also have the burden of proof to demonstrate an inmate's failure to exhaust administrative remedies. *Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 683 (4th Cir. 2005) ("An inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant.").

Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. *Jones*, 549 U.S. at 204. It also has the potential to reduce the number of inmate suits and to improve the quality of suits that are filed by producing a useful administrative record. *Id.*; *Woodford*, 548 U.S. 81, 93 (2006). When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and

evidence can be gathered and preserved. *Woodford*, 548 U.S. at 95. No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford*, 548 U.S. at 93.

In the instant case, although Defendants claim that Plaintiff's grievance was deemed abandoned because Plaintiff was allegedly masturbating when Snyder attempted to serve the response, Defendants cite to no policy indicating such a rule was in effect.  Additionally, Defendants set forth no allegations that Plaintiff was asked to sign the grievance, was made aware that his masturbation was deemed an abandonment of the grievance, or knew that Snyder had attempted to serve a response to the grievance.  Because Defendants have the burden of proof on this issue and have not set forth any allegations showing Plaintiff knew or should have known that he was abandoning his grievance by masturbating, the undersigned is constrained to recommend Defendants' motion for summary judgment be denied.[2]

Additionally, Plaintiff argues that the grievance response was untimely at the time Synder attempted to serve it on him. Therefore, Plaintiff argues that his administrative remedies were deemed exhausted by Defendants' failure to timely submit a response and the

---

[2] Because there are no allegations that Plaintiff was informed, by policy or otherwise, that his grievance could be deemed abandoned because of his masturbation, the undersigned does not reach the question of the legal validity of such a policy, and whether a written policy would be necessary.

7

expiration of all time periods. *Harden v. South Carolina Dept. of Corrections*, C/A No. 8:07-9-MBS, 2007 WL 675632, *3 (D.S.C. Feb. 28, 2007) ("Once the full period for prison responses has run without the issuance of any response, it is generally held that the inmate has substantially complied with the §1997e exhaustion requirement.") (citations omitted). Although Defendants contend the grievance was held in abeyance while the Division of Investigation completed a review or investigation of the matter, Defendants attach a copy of the relevant policy at the time at issue, which does not explicitly provide for such an abeyance period.[3] [Entry #82-5]. Because the burden of proof related to exhaustion of administrative remedies rests on Defendants and they have failed to show the warden's response to Plaintiff's grievance was timely, the undersigned submits that Defendants are not entitled to summary judgment.

III.    Conclusion

For the foregoing reasons, it is recommended that Defendants' Motion for Summary Judgment [Entry #82] be denied.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

October 18, 2011                           Shiva V. Hodges
Florence, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[3] Apparently, the policy has since been amended to set forth the abeyance period explicitly. *See* Hallman Aff, ¶ 5 [Entry #95-1, #95-2].